Hall v. Commonwealth.

CASE 110—INDICTMENT FOR LARCENY—JUNE 15.

# Hall v. Commonwealth.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. CRIMINAL LAW—LARCENY—INSTRUCTION NOT PREJUDICIAL.—On the trial of a defendant on the charge of larceny, where the defense is that the defendant found the articles alleged to have been stolen, an instruction in the usual form that to constitute guilt the defendant must be shown to have taken and carried away with felonious intent the stolen articles is not prejudicial, although it ignore the defense set up.

2. CONSTITUTIONAL LAW—HABITUAL CRIMINALS ACT.—The statute prescribing a life sentence for a third conviction of felony is not unconstitutional.

3. SAME—INSTRUCTION.—On the trial of an indictment for larceny where two former convictions are also alleged the defendant is not entitled to a separate finding on the guilt or innocence of the main charge, but the jury should be required to find, under appropriate instructions, the fact of former convictions and fix the increased penalty.

Hall v. Commonwealth.

JOHN W. RAY FOR THE APPELLANT.

1. Appellant was entitled to have a trial on the question of her guilt or innocence on the charge contained in the indictment alone, and without submitting to the jury at the same time proof as to former convictions.
2. The court erred in admitting before the jury copies of judgments of former convictions for grand larceny because they did not come from the proper custodian.
3. The court erred in refusing to instruct the jury on the question of the effect of finding the money and then appropriating it to her own use.
4. The court erred in rendering judgment or pronouncing his sentence for the term of appellant's natural life when the only time fixed by the jury was one year in the penitentiary. The trial jury must fix the term of punishment. Ky. Stats., secs. 1130-1136.

W. S. TAYLOR, ATTORNEY-GENERAL, AND M. H. THATCHER FOR APPELLEE.

1. The habitual criminals act is constitutional.
2. It was incumbent on the jury to find the guilt or innocence of the defendant upon the main charge and also the fact of former conviction. When the verdict was returned, finding the defendant guilty of the crime charged and finding the further fact that she had been twice before convicted of felony, the life sentence followed logically and she was not prejudiced by the judgment of the court in that regard.
3. The defendant was not prejudiced by the ordinary larceny instructions.
   Citations: Ky. Stats., sec. 1130; Stewart v. Com., 2 Ky. Law Rep., 386; Combs v. Com., 14 Ky. Law Rep., 245; Wharton's Crim. Law, sec. 906.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

Appellant was found guilty of grand larceny, under an indictment which, in addition to the charge of grand larceny, alleged that she had been twice theretofore convicted of felonies, the punishment of which was confinement in the penitentiary, setting forth the terms and courts at which the former convictions had been had.

The evidence of her guilt was circumstantial. It was shown that the prosecuting witness, having divided his

money, put thirty-two dollars of it in a sock, which he concealed in a tub in the yard of the house where he was staying; that he slept in the same room with appellant, another woman, and two children; that appellant went out in the yard about 4 o'clock in the morning; and made purchases of furniture and other things, and paid her rent, on that day. Evidence was also introduced as to two former convictions, which were both for grand larceny. Objection was made both to the admission of this testimony, and to the unofficial character of the person by whom the records of the former conviction were produced; he being a son of the clerk of the penitentiary, and acting as clerk during the clerk's sickness. Appellant testified to the fact that she found the money, not in a sock, but lying in the path leading through the back yard; that she did not know it was the property of defendant, and, from his statement made the night before, thought he had no money.

The court gave the ordinary instruction as for grand larceny; directing the jury that, if they found her guilty, they should fix her punishment at confinement in the penitentiary for not less than one nor more than five years, and gave in addition an instruction that if they found her guilty under the first instruction, and should further believe that she had been twice theretofore convicted of felony, as charged in the indictment, they should so find and state in their verdict.

The court refused to charge the jury specially as to what they must believe in order to find appellant guilty of grand larceny, if they believed that she found the money. This also is urged as ground for reversal. This question has been already ruled upon by this court,

through Judge Paynter, in Hester v. Com., 16 Ky. L. R., 783, [29 S. W., 875], where it was held that the instruction required the jury to believe that she did feloniously "take, steal and carry away" the money was more favorable to the accused than if the court had instructed specially upon the defense that she had found the money, because, "if the jury believed that she did find the money, they could not find her guilty, under the instructions of the court."

It is earnestly urged that it was error to permit the introduction of evidence of former convictions at all until the jury should have first found her guilty under the charge for which she was then being tried; that it amounted to the admission of testimony to impeach her general character, which she had not put in issue, and enabled the Commonwealth to show her to the jury in the light of a common thief, and rebut the presumption of innocence which the law gives her by evidence in chief upon a trial for grand larceny.

It is painfully apparent that, with the circumstances shown as to the loss of the money, and evidence of two former convictions for grand larceny, the accused, who is an ignorant negro woman, had not the slightest chance that an average jury would entertain a reasonable doubt of her guilt, while, without the evidence of former convictions, there was a possibility that they might do so. There is considerable force, therefore, in the proposition urged, that this procedure denied the accused a fair trial of the offense whereof she was accused. But the statute as to habitual criminals (Kentucky Statutes, section 1130), seems to have created an additional and higher degree of

[57]

offense, viz., the commission of a felony, having been
theretofore twice convicted of a felony, etc. To show
the accused guilty of this degree of the offense charged, it
is necessary to show the former convictions; and this, of
course, is bound to prejudice the accused,—just as evi-
dence showing malice is bound to prejudice the defend-
ant in a murder case,—but it may be shown to make out
the higher degree of the offense, which authorizes the se-
verer punishment. The statute has been held constitu-
tional, and it has been held essential to allege the former
conviction or convictions in the indictment. Stewart v.
Com., 2 Ky. Law Rep., 386; Mount v. Com., 2 Duv., 93;
Taylor v. Com., 3 Ky. Law. Rep., 783; Boggs v. Com.,
9 Ky. L. R., 342, [5 S. W., 307].

The statute requires the jury to find the fact of the
former convictions. There is no provision for a separate
trial of the fact of former conviction, nor do we think the
statute intended there should be one. The law seems to
work a hardship, but it is a hardship the Legislature
alone can remedy.

In Combs v. Com., 14 Ky. L. R., 245, [20 S. W., 268],
this court, through Judge Lewis, recognized the legality
of this procedure, saying:

"It was distinctly and sufficiently charged in the
indictment, and fully proved on the trial, and also
found by the jury, that appellant had been twice before
the present offense convicted of a felony, the punishment
of which is confinement in the penitentiary; and there-
fore the penalty of confinement in the penitentiary for
life became, according to section 12, article 1, chapter 29,
General Statutes, [now section 1130, *supra*], inevitable,
and the court could do no less than so instruct, and
the jury, after finding the present offense a felony, was

Hall v. Commonwealth.

bound to render the verdict in pursuance thereof. The
validity of that statute has heretofore been sanctioned
by this court and it is now needless to discuss the ques·
tion."

The jury rendered a verdict as follows:

"We, the jury, find the defendant guilty of grand lar-
ceny, and fix her punishment at one year confinement in
the Kentucky penitentiary. E. M. Wallace, Foreman.

"We, the jury, further find that the defendant was at
the April term, 1883, of the Ballard Circuit Court, con-
victed of a felony, and that said defendant was again
at the January term, 1893, of the Franklin Circuit Court,
convicted of a felony. E. M. Wallace, Foreman."

It is urged that it was error for the court to sentence
the defendant to confinement in the penitentiary for life
under this finding, that section 1136 specifically requires
the jury by whom the offender is tried to fix by their ver-
dict the punishment to be inflicted, within the periods or
amount prescribed by law.

Upon the other hand, it is insisted for the
Commonwealth that by section 1130, it is man-
datory that, if convicted a third time of felony, the
accused shall be confined in the penitentiary during his
life, under the provision, "Judgment in such cases shall
not be given for the increased penalty, unless the jury shall
find from record and other competent evidence the fact
of former convictions for felony committed by the pris-
oner in or out of this State." It is argued therefore, that
as said in the Combs Case, *supra*, the life penalty became
inevitable and that it was the duty of the *court*, in rend-
ering judgment, to so fix it.

Differing from the English system, and from
that which obtains in the courts of the United

States and in many of the States, our system re-
quires the jury to fix the punishment of the offender,
within the limitations prescribed by the statute, and as'
to such limitations they are instructed by the court. The
other system requires the jury only to find the fact of
guilt, and the degree of the offense, if it is an offense
having different degrees. Upon this verdict ascertain-
ing the fact of guilt, the court proceeds to render judg-
ment within the limitations fixed by the law. Under the
old system, the jury have nothing whatever to do with
adjusting the punishment to fit the crime. Under our
system, it was intended that they should have every-
thing to do with it, so they did not transgress the bounds
prescribed. And it may be argued with some plausibil-
ity that our system contemplates a consideration by the
jury of the punishment to be inflicted under the law, in
fixing the degree of the offense of which they find the de-
fendant guilty. It is not our duty to discuss the relative
merits or demerits of the two systems. That question
is not under discussion. But it is our duty to consider
what our own system was intended to effect, and whether a
failure to carry out its general design in any particular
is prejudicial to any substantial right of the accused
whose case is brought before us.

On the trial of a criminal case in the Feder-
al Court, counsel for defense is not permitted
to tell the jury what penalty will be imposed
if they render a verdict of guilty. In our courts a con-
siderable portion of the argument of counsel for the de-
fendant is frequently devoted to discussing the severity
of the punishment, as contrasted with the trivial nature
of the offense. Under our system, whether by direct de-
sign as to this point, or as necessary to effect another

purpose, it is contemplated, at all events, that the jury should know and say what punishment is to be imposed for the offense of which they find the accused guilty. The statute (section 1136) requires them to fix by their verdict the punishment to be inflicted, within the periods or amount prescribed by law.

It will not do to say that, the fact of two former convictions being ascertained and found by the jury, it is inevitable that punishment by confinement in the peniteneiary for life should follow, and therefore that the court is authorized to so adjudge. If a defendant is found guilty of murder, it is inevitable that he should be hung or confined in the penitentiary for life; but no Commonwealth's attorney would be hardy enough to come to this court expecting to affirm a judgment of confinement for life upon a verdict running, "We, the jury, find the defendant guilty of murder as charged in this indictment." And yet that punishment would be as inevitable from that verdict as it is in this.

Nor is there anything incompatible or conflicting in the two statutes,—sections 1130 and 1136. By the one it is mandatory that, if convicted a third time of felony, the accused shall be confined in the penitentiary during his life. By the other section it is equally mandatory that the jury shall fix the punishment,—just as it is mandatory that the jury shall fix the punishment of murder at confinement in the penitentiary for life, at the lowest.

This is in strict accord with the theory under which the increase of punishment inflicted upon habitual criminals is reconciled to the Constitution. That theory is, as we have said, that a higher grade of offense is created by the statute. The accused is not sent to the peniten-

tiary for life for committing grand larceny, but for the offense of grand larceny after having been twice convicted of felony, the punishment whereof is confinement in the penitentiary.

And so the proper procedure, in order to inflict this seemingly oppressive punishment, is that the jury should find that the accused is guilty of grand larceny; that she has twice theretofore been convicted of a felony, the punishment whereof is confinement in the penitentiary; and that the jury fixes her punishment at confinement in the penitentiary for life.

The contrary view is bound to work hardship and oppression. A jury, in a criminal case, like this, is not presumed to know any law as to that case, except that which they are told by the court; for the court is required to give to the jury, in its instructions, all the law of the case. They are properly instructed as to the law of grand larceny. They are also required to find certain facts. As matter of course, it is their duty to find those facts accurately; but they are not told the effect of their finding, nor can they, under such circumstances, be expected to realize the importance of it. Under the instructions as to grand larceny, they find the accused guilty, and fix her punishment at a year's confinement in the penitentiary, —one would think, an ample punishment for stealing thirty-two dollars, under the circumstances as they appear in this case. But they find, in addition,—without dreaming, so far as this record shows, of the effect of that finding,—a fact upon which, according to the Commonwealth's contention, the court inevitably sentences the accused to confinement in the penitentiary for life. It may be urged that, for securing unprejudiced action

by the jury in their finding of such facts, it is better that they should not know the effect of their finding. But our system requires them to know it.

The case of Chenowith v. Com., (Ky.), [12 S. W., 585], is not incompatible with this view, for there the jury were evidently instructed as to the effect of finding the existence of former convictions. Their verdict showed it. By an error in computation, the jury fixed the punishment at more than this court thought it should have been. The trial court rendered judgment in accordance with the verdict, and this court reversed the case, with directions to render what was considered the proper sentence.

Nor is there any conflict whatever with this doctrine in the recent case of Herndon v. Com., (decided by Judge Hobson), [48 S. W., 989]. There the jury were instructed if they found the defendant guilty, and also found that he had been twice previously convicted, as required by the statute, they should fix his punishment at confinement in the penitentiary for life. Their verdict found him guilty as charged, and fixed his punishment at confinement in the penitentiary for life. It was accordingly held that a substantial compliance with the requirements of the statute as to finding the fact of former convictions had been had, because, under the instructions, the jury could not have fixed his punishment as they did, except by finding the fact of the former convictions.

For the reasons given, the judgment is reversed, with directions to render sentence on the verdict, fixing the punishment at one year's confinement in the penitentiary.