## Commonwealth ex rel. Watters, Appellant, v. Myers.

Submitted November 15, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, BOK, EAGEN and ALPERN, JJ.

118

*Sherman S. Watters*, appellant, in propria persona.

*Wilson Bucher*, Assistant District Attorney, and *Alfred C. Alspach*, District Attorney, for appellee.

OPINION BY MR. JUSTICE EAGEN, January 2, 1962:

On September 8, 1958, the defendant plead guilty generally to an indictment charging murder. He was represented by counsel. Testimony was taken before the court en banc on September 18, 1958. He was adjudged guilty of murder in the second degree and sentenced to serve a term of not less than seven years nor more than fourteen years in a state penal or correctional institution to be designated by the Eastern Correctional Diagnostic and Classification Center of the Eastern State Penitentiary. No motion for a new trial was requested, nor was an appeal from the judgment of conviction and sentence filed.

On January 31, 1961, the defendant filed a petition for a writ of habeas corpus. A rule to show cause was granted. Defendant's counsel was afforded the opportunity of arguing the merits of the request. Subsequently, the court dismissed the petition without a hearing. From that order, this appeal followed.

Relator bases his request for the writ upon the following grounds:

First, he says that two on-the-scene witnesses of the crime were willing to testify on his behalf; that they

were present in the courtroom at the time of trial; that his own counsel refused to call these witnesses to the stand; that when the defendant was personally on the stand giving his testimony, he openly requested the court and the district attorney that these witnesses be allowed to testify on the defendant's behalf, but that his request was ignored.

These allegations are contrary to the facts evidenced by the record.

The victim in the case was one William Aaron Gibbson. He died as a result of two serious stab wounds; one penetrating the buttock and extending into the pelvic cavity; the second, penetrating the abdominal wall and extending into the abdominal cavity. The body also suffered two superficial incise lacerations of the chest wall. A witness, who came on the scene where and when the victim was lying in death agony, saw the defendant standing over the body. The defendant told the witness to mind his own business and said, "I killed one man and I'll kill you." There was evidence that the defendant and the victim had engaged in an argument a short time earlier and that the defendant had threatened to kill Gibbson. There was evidence that both individuals had been drinking intoxicants earlier.

The defendant was immediately taken into custody by the police. He readily admitted doing the stabbing. He said that he and Gibbson had an argument, that Gibbson hit him and this made him mad and then he cut Gibbson, how many times he didn't know. The defendant was given a drunkometer test immediately, which manifested a blood alcoholic content of .18 of one per cent.[1]

---

[1] According to the testimony this degree of intoxication caused the defendant to lose some of his coordination but did not affect his ability to be aware of his surroundings or know what was happening.

The defendant took the stand on his own behalf. He testified that he and Gibbson had been drinking together; they got into an argument; Gibbson swung at him and hit him; the blow stunned the defendant; his mind went blank and when his mind cleared, he had a paring knife in his hand.

The alleged on-the-scene witnesses of the crime which the defendant now claims were not called to testify are Mrs. John Gibbson, mother of the victim, and Mrs. Goldie Patterson, a friend of the Gibbson family. An examination of the defendant's own testimony at the trial shows that neither of these individuals were eyewitnesses to the affair nor were they on the scene. He specifically testified that at that time they were inside the house, completely unaware of the argument or stabbing which occurred on the outside. Further, a careful study of the record fails to disclose that the defendant, at any time, made a request of anyone that these individuals be called to testify. The refusal or failure of defendant's counsel to call these witnesses to testify also indicates they knew nothing pertinent to the inquiry.

Secondly, the defendant alleges that the court sentenced him following the hearing without making any adjudication of his guilt, or determination of the degree of murder of which he was guilty. Again, the record of the proceedings shows this to be totally untrue. The court, after conferring, entered an adjudication of guilty of murder in the second degree before imposing sentence.

Lastly, the defendant complains that he was convicted upon perjured testimony; that the trial court was biased and that he was coerced by threats of his own counsel into pleading guilty. Again, a careful reading of the record discloses that these accusations are without foundation. The defendant was given a fair, painstaking hearing. He was adequately defended. He was.

given every opportunity to tell his side of the story and to present testimony in corroboration.

Further, habeas corpus is not a substitute for an appeal, a writ of error, or a motion for a new trial: *Commonwealth ex rel. Bolish v. Banmiller,* 396 Pa. 129, 151 A. 2d 480 (1959), and *Commonwealth ex rel. Kennedy v. Myers,* 393 Pa. 535, 143 A. 2d 660 (1958). The collateral attack upon the conduct of the trial, which is what the defendant is now attempting to accomplish, may not be done through habeas corpus.

Since the allegations of the defendant's petition were emphatically refuted by the hearing and trial record, no issues of fact were present and the court below properly dismissed the rule to show cause without a hearing: *Commonwealth ex rel. Spencer v. Ashe,* 364 Pa. 442, 71 A. 2d 799 (1950); *Commonwealth ex rel. Elliott v. Baldi,* 373 Pa. 489, 96 A. 2d 122 (1953); *Commonwealth ex rel. Harris v. Banmiller,* 391 Pa. 132, 137 A. 2d 452 (1958).

Order affirmed.