Commonwealth ex rel. Bolish, Appellant, *v.* Banmiller.

130

Submitted April 24, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*Daniel Bolish,* appellant, in propria persona.

*Ralph P. Needle,* Assistant District Attorney, and *Carlon M. O'Malley,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BOK, May 28, 1959:

This is the third appearance of this case. Relator originally was found guilty of first degree murder and given death. We reversed for trial errors: *Commonwealth v. Bolish,* 381 Pa. 500; 113 A. 2d 464 (1955). The second trial resulted in a verdict of first degree murder and a penalty of life imprisonment. This was appealed and affirmed: *Commonwealth v. Bolish,* 391 Pa. 550; 138 A. 2d 447 (1958). Relator now appeals from the denial by the court below of his petition for a writ of *habeas corpus.* He was represented at trial and on both appeals by able and experienced counsel.

We could affirm out of hand on the ground, immemorially taken, that *habeas corpus* is not a substitute for an appeal, a writ of error, a motion for a new trial, or the correction of trial errors: *Commonwealth ex rel. Kennedy v. Myers,* 393 Pa. 535; 143 A. 2d 660 (1958) and cases cited. However, a few observations may be in order.

Appellant complains that his petition for the writ was denied without a hearing after a rule to show cause had issued and an answer had been filed by the Commonwealth. This is proper when the allegations of the petition are refuted by the trial or court record, which may not be impeached in a collateral proceeding until the contrary competently and affirmatively appears: *Commonwealth ex rel. Spencer v. Ashe*, 364 Pa. 442; 71 A. 2d 799 (1950); *Commonwealth ex rel. Kaylor v. Ashe*, 167 Pa. Superior Ct. 263; 74 A. 2d 769 (1950). Where the petition fails to make out a case or where there are no issues of fact, a hearing is unnecessary: *Commonwealth ex rel. Elliott v. Baldi*, 373 Pa. 489; 96 A. 2d 122 (1953); *Commonwealth ex rel. Bishop v. Claudy*, 373 Pa. 523; 97 A. 2d 54 (1953); *Commonwealth ex rel. Harris v. Banmiller*, 391 Pa. 132; 137 A. 2d 452 (1958). The case at bar falls within these rules.

Relator's central argument is that the felony-murder doctrine could not legally be applied to him because he was not tried on the arson indictment and because the victim, Flynn, died accidentally. What relator asks is, in effect, a reargument of the appeal from his second conviction and our adoption of the two dissenting opinions at 391 Pa. 550 as the majority view of the Court. We are unwilling to do this because the majority opinion of Mr. Justice ARNOLD there and of the Chief Justice in *Commonwealth v. Redline*, 391 Pa. 486; 137 A. 2d 472 (1958) represent the law of the case and the present law of the Commonwealth. And the record shows not only that the trial judge charged fully and unobjectionably on common law arson as the basis of felony murder but that at trial after relator's counsel had objected successfully to a consolidation of the arson and murder bills, no objection was made to proceeding on the murder bill instead of the arson

bill. Consolidation or separation of indictments is a matter for the trial judge, whose conclusion will be reversed only for obvious abuse of discretion or prejudice to the defendant: *Commonwealth v. Kloiber,* 378 Pa. 412; 106 A. 2d 820 (1954); *Commonwealth v. Patrick,* 174 Pa. Superior Ct. 593; 101 A. 2d 139 (1953). No question of discretion or prejudice was raised on the main appeal or at any time until now.

Further, the circumstantial evidence indicating Flynn's presence in the house and his death as a result of arson is outlined in Justice ARNOLD's opinion.

While there was no direct evidence of appellant's presence in the house at the time of the fire, there is ample circumstantial evidence to indicate his presence and participation in the act of arson. On the day before, he bought a gallon of kerosene and took it away in a jug that had a greasy bottom. Six hours later, at 8:30 p.m., he borrowed Maddon's car. He and Flynn were seen together in a restaurant and in the street as late as ten minutes past midnight. The fire and explosion occurred at 1:15 a.m., and immediately afterwards a car, later identified as Maddon's, was seen driving rapidly away from the scene. At 2:45 a.m. relator returned the car keys to Maddon. The car had a greasy ring on its floor mat the size of the gallon jug and a blanket found in the car contained kerosene which was shown by analysis to have come from the supply of kerosene that relator had bought. Relator told Maddon to tell no one that he had borrowed the car, and he himself twice denied that he had borrowed it. When he returned the keys he told Maddon that Flynn had borrowed one of Maddon's shirts and that it was in the car. The shirt was found along the bloody trail left by Flynn after the fire. Maddon later told relator that he had found the shirt and testified that relator told him to get rid of it. Maddon then showed rela-

tor a key that he had found in the pocket of the shirt, and relator asked for it and took it. It was later found in the sewer at the corner where he had left Maddon, and it proved to be a twin key to the burned house. The house showed evidence of kerosene after the fire and of an explosion caused by the ignition of it by a "hot plate"; no such plate was owned or had been left in the house by the family, who were absent at the time of the fire. The electricity was turned on.

The record amply supports the quality of this evidence as reasonably and naturally suggesting guilt beyond a reasonable doubt, if believed, as it was by the jury: *Commonwealth v. Carey*, 368 Pa. 157; 82 A. 2d 240 (1951).

Relator raises four other points.

One is that Flynn was a Catholic and that his dying declaration, which was favorable to relator's case, was, on that account, certain to be the truth. This was left to the jury by the trial judge and was concluded by the verdict.

The next point is that relator was held incommunicado for five days, and on this account he claims his freedom. This can never follow unless defendant has been harmed. Relator says that he was denied a lawyer, but his testimony shows that he made no confession or admission and did not ask for counsel until he was charged with murder at the end of six days. The only direct prejudice he alleges is that during this period of segregation one or more witnesses who could have established an alibi disappeared. He does not say who the witnesses are, where they lived, or what their testimony would have been: the inference he suggests is that they vanished utterly and beyond hope of discovery. Since relator has known this or should have known it all along and has not raised the point throughout two trials and appeals, it deserves no credence now.

The third point is that he complains of the press, arguing that such stories were printed about the first trial that no citizen of the county could have failed to read them and to form an opinion adverse to him before the second trial. The answer to this is that there are over two hundred pages of the record devoted to the examination of jurors on their *voir dire,* with every opportunity to establish such bias if it existed. And again, the point was not raised at the trial or appeal, but only now.

The final point is, referring to the various matters dealt with in this opinion: "Since the adverse decision upon the said appeal [391 Pa. 550] the relator has discovered constitutional rights which have been overlooked by his former counsel, either through hurry or perhaps negligent representation." He cites and relies on *Commonwealth v. O'Brien,* 312 Pa. 543; 168 A. 2d 244 (1933), in which, during his charge to the jury, the trial judge misstated the central fact in the case and counsel failed to call it to his attention. There is no question about the correctness of the *O'Brien* decision, but it has no application here. If a defendant could cry lack of due process whenever he lost his case or his counsel made or decided not to make an objection, a court trial would be a wasteland of confusion. Nor does every point a prisoner can think of amount to a violation of the Fourteenth Amendment. There must be a decent end to litigation after the tested measures of the law have been applied to it.

Not only do the points raised by relator have no merit, but they should have been raised and disposed of *pendente lite.*

The judgment is affirmed.

Mr. Justice COHEN and Mr. Justice McBRIDE concur in the result.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

A case that is decided erroneously will never die until the error is corrected. Daniel Bolish, the defendant in this case, was tried and convicted of first degree murder although the Commonwealth did not even prove that a murder had been committed. Section 701 of The Penal Code of 1939 provides: "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree."

Bolish was convicted of the murder of Robert J. Flynn, but Flynn did not die as the result of murder. His death was entirely accidental. No one killed Flynn, no one tried to kill Flynn, no one wanted to kill Flynn. In order to sustain the conviction of Bolish, Section 701 above cited would have to read that: "All *deaths* which shall occur during the perpetration of or attempting to perpetrate arson shall be murder in the first degree." But the statute does not so read. It says that "All *murder* which shall be perpetrated . . ." Where is the murder in the death of Flynn?

This Court has no right to read into a statute what is not there. When the Legislature decides to impose the penalty of death or life imprisonment for the crime of arson, it will say so, in language which is clear and unmistakable. It has not said so up to the present time and I cannot help but regard this Court's arbitrary interpretation of the statute as indicated in the Bolish case as anything other than judicial usurpation of legislative powers.

The Bolish case was considered by this Court at 381 Pa. 500 and at 391 Pa. 550, and in each instance

the Majority held that Bolish could be found guilty of murder in the first degree even though it is admitted that Flynn's death was accidental. The Majority argued in those two appeals, as it does today, that, since Bolish had had a hand in planning the arson which Flynn was perpetrating when an accidental explosion killed him, he was guilty of first degree murder. In addition to extending the statute beyond its plain meaning, the Majority at 391 Pa., extended the physical facts. The Majority Opinion said that there were: "both direct and circumstantial evidence showing the presence of Bolish in the Torti house at the time of the explosion." The truth of the matter is that there was neither direct nor circumstantial evidence to prove the presence of Bolish at the Torti house at the time of the explosion. In my Dissenting Opinion I contested this conclusion on the part of the Majority. I was rather emphatic in asking for facts on which the Majority built its unwarranted assumption: "What has happened to the noble Institute of Authentic Fact? Has it crumbled and may facts now be fashioned out of thin air? Does the Majority operate on the theory that a repetition of an erroneous statement cleanses it of the impurity of error? In this respect I must say that two times two does not become five on the second or even two-hundredth reiteration of the arithmetical incongruity."

The Majority Opinion in the present appeal concedes that there was no direct evidence of Bolish's presence in the house at the time of the fire but says that there was "ample circumstantial evidence to indicate his presence and participation in the act of arson." But this is an argument to establish X by proving Y. Unless it can be shown that the death of Flynn was part of the plan to successfully commit arson, Bolish cannot be convicted of first degree murder. The

death of Flynn did not further the design to commit the felony of arson; in point of reality, it became a barrier to its accomplishment.

But, in any event, the decision in the case of *Commonwealth v. Redline*, 391 Pa. 486, which overruled the *Thomas* decision (382 Pa. 639) rather well shattered the supposed reasoning on which the Bolish conviction rested. If the *Redline* decision is sound, and, of course, it is, the Bolish conviction of murder cannot be supported in law, logic, reason, or common sense.