Commonwealth ex rel. Johnson v. Rundle,
Appellant.

498

Argued April 24, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Jules Bell,* Assistant District Attorney, with him *Richard Lowe,* District Attorney, for appellant.

*H. Lester Haws,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, July 2, 1963:

Johnson was convicted twice of murder in the first degree. In the first case the jury fixed the penalty at death and in the second case the jury fixed the penalty at life imprisonment. Johnson's first conviction was set aside by this Court because of trial errors: *Commonwealth v. Johnson,* 368 Pa. 139, 81 A. 2d 569. His second conviction and sentence was sustained by this

Court in a lengthy unanimous opinion in *Commonwealth v. Johnson*, 372 Pa. 266, 93 A. 2d 691. After that decision, the Supreme Court of the United States denied certiorari. In our opinion in 372 Pa. this Court carefully reviewed and rejected all of Johnson's contentions, including his objections to the admissibility of prior convictions under the so-called Parker rule— *Commonwealth v. Parker*, 294 Pa. 144, 143 A. 904.

On May 9, 1948, a passenger train of the Reading Company was derailed and wrecked at a point in Montgomery County about 1-1/3d miles east of the Valley Forge Station. The engine and three cars were thrown on their sides, the lives of ninety-six passengers were jeopardized, and the engineer and the fireman of the train were killed. Johnson confessed he had removed the spikes from the rail and pointed out to the police the door of the tool house which he had broken in order to obtain a bar, a wrench and a pick. He also pointed out to the police the exact place where the train had been derailed. At the trial he partially repudiated his confessions and also relied upon an alibi.

Johnson was convicted of the murder of the engineer and the fireman under Section 919 of The Penal Code of June 24, 1939, P. L. 872. Section 919 provides, inter alia, that "Whoever wilfully and maliciously . . . removes or displaces any rail" of a railroad, is guilty of felony, and in every case where the life of a human being is destroyed by, or as a result of any of such acts, the offender "shall be deemed guilty of murder in the first degree."

After his second conviction, Johnson appealed to the Board of Pardons for clemency in 1958 and in 1959, but each time his petition was refused.

Johnson recently filed an application with the Court of Common Pleas of Montgomery County for a writ of habeas corpus principally on the grounds (a) that evidence of a prior conviction in the State of Dela-

ware for "obstructing a railroad" had been improperly admitted in evidence in his above mentioned murder trial and this amounted to a violation of due process, and (b) that his connection with the derailment and his conviction were based solely on confessions which were not voluntary and had been improperly obtained from him.*

Judge QUINLAN granted the writ and from his Order the Commonwealth, through the Superintendent of the State Correctional Institution, now appeals. The Order which is appealed from was as follows: "AND NOW, June 28, 1962, for the foregoing reasons, it is directed that the judgment and sentence in the above case be hereby set aside and vacated and that the Writ of Habeas Corpus be issued directing Alfred T. Rundle, Superintendent, State Correctional Institution at Philadelphia, Pennsylvania, to release James Morris Johnson to the custody of Andrew J. White, Warden, Montgomery County Jail, to which latter institution James Morris Johnson is remanded to await trial on the said bills of indictment charging him with murder. By the Court: (s) DANIEL L. QUINLAN, JR., J."

The hearing judge based his decision and Order on the following facts, reasoning and conclusions. One juror stated, on his voir dire, that he would not impose the penalty of death (if the Commonwealth proved beyond a reasonable doubt that defendant had committed the crime of murder in the first degree), because he did not believe in capital punishment; and this juror was not challenged by the Commonwealth. The Judge reasoned that consequently the District Attorney knew at the commencement of Johnson's trial that he would not ask the death penalty and the jury would never (unanimously) impose the death penalty. Although such a juror would likely be highly advantageous in-

---

* This second ground was mentioned merely casually on appeal, and was not discussed by the Court below.

stead of prejudicial to Johnson, the introduction of Johnson's previous criminal record (burglaries and "obstructing a railroad" in Delaware, which is a felony in that State) was not for the limited and proper purpose for which it was introduced—namely, to aid the jury in fixing the penalty,* but to influence the jury to find a verdict of guilty. The hearing Judge correctly states that under *Commonwealth v. Scoleri,* 399 Pa. 110, 160 A. 2d 215, defendant's prior criminal record was admissible for the above mentioned limited purpose and that the trial Judge accurately and fairly charged the jury on this point. However, Judge QUINLAN concluded that the realities—viz., the juror's conscientious scruples and the failure of the District Attorney to challenge him, demonstrate that the real purpose of this evidence was (we repeat) to improperly influence the jury—made a fair trial impossible and hence constituted a violation of due process. For reasons which we shall hereinafter state we disagree with this conclusion—far more important it flies in the teeth of two recent decisions of this Court.**

We have emphasized the Opinion of the hearing Judge because on this point appellant in effect merely adopts and repeats the Judge's reasoning and conclusions.

In *Commonwealth v. Lowry,* 374 Pa. 594, 98 A. 2d 733, the Court said (page 603) : "Defendant also con-

---

* The law has since then been changed by the split verdict Act of December 1, 1959, P. L. 1621, 18 P.S. §4701.

** Every Judge like every other American is entitled to his own beliefs and his own views, and every Judge of a lower Court is entitled to disagree with an Order or Decree or Judgment, or the reasoning of an Appellate Court, but he cannot ignore or defy them. Similarly, every Judge on the Supreme Court of a State is entitled to disagree with an Order or Decree or Judgment, or the reasoning of the Supreme Court of the United States, but he cannot ignore or defy them. If it were otherwise, appellate jurisdiction would be both a mockery and a nullity, and the judicial system of the United States might as well be abolished.

tends that it was improper, and reversible error to allow in evidence proof of defendant's prior criminal record when the District Attorney did not ask or intend to ask for death. The District Attorney believed the defendant was the ringleader in the crime, but he did not know until all the evidence was presented whether he could or would ask the jury to impose the penalty of death. *In any event the law is clear that the jury could have disregarded any recommendation which the District Attorney or even the Court made,** since they and they alone have the right and power to determine the crime, the degree of the crime, and the penalty of death or life imprisonment: Penal Code of 1939, Sec. 701, Act of June 24, 1939, P. L. 872. . . .

"Even where the District Attorney asks only life imprisonment *it is* for the reasons hereinbefore set forth, *not reversible error to admit defendant's prior record under the proper charge of the Court,* limiting its purpose and scope as heretofore set forth. Cf. Com. v. Simmons, 361 Pa., [391]."

The hearing Judge attempted to distinguish the *Lowry* case on the ground that the District Attorney in the *Johnson* case, unlike the District Attorney in the *Lowry* case, "knew at the outset of the second trial that he would not seek the death penalty", and he also knew the jury would not impose the death penalty. This distinction was in complete disregard of the above statement of this Court in *Commonwealth v. Lowry*:**

"Even where the District Attorney asks only life imprisonment it is for the reasons hereinbefore set forth, not reversible error to admit defendant's prior

---

* Italics throughout, ours.

** Moreover, it is a matter of both common and Judicial knowledge that nearly everyone, including jurors and Judges, often change their minds, even in the most important matters which from time to time confront them and even in some of their basic and long-held beliefs.

record under the proper charge of the Court, limiting its purpose and scope as heretofore set forth. Cf. Com. v. Simmons, 361 Pa., [391]."

Even more important the contentions which are made by Johnson in the present habeas corpus proceedings were orally made by him and rejected by this Court in *Commonwealth v. Johnson*, 372 Pa., supra., as is evidenced by the following:

In the present habeas corpus hearing before Judge QUINLAN, Johnson's very experienced attorney, who represented him at both of the above mentioned murder trials as well as in this habeas corpus proceeding, stated: "I objected to the introduction of a prior record on two grounds. First of all, there was no reason for the introduction of a prior record because, as stated in Parker, a prior record was only to be introduced in evidence to assist the jury in choosing between life and death. Now, where you didn't have that involved and there wasn't any asking for death then we contend, *I contended then, I contended to the Supreme Court of Pennsylvania,* and they of course threw this Parker Rule at me, too, that there was a denial of due process of law."

In *Commonwealth v. Parker*, 294 Pa., supra, the Court held that under the Act of May 14, 1925, P. L. 759, evidence as to prior independent unconnected criminal offenses committed by the defendant was admissible in evidence as part of the Commonwealth's case, for the purpose of enabling the jury to fix the penalty. Very many times and in very many cases (prior to the Amendatory Act of 1959) defendants who were convicted of crime have attacked the so-called Parker rule on the ground that the admission of prior crimes was prejudicial fundamental error because it was intended to, or its realistic effect was to influence and prejudice the jury against the defendant in a determination of guilt, instead of aiding them in determining the pen-

alty. This is essentially the same contention as is now made by this defendant-appellant, but it has heretofore always been rejected and is now once again rejected by this Court.*

Johnson also contends that the only evidence connecting him with the crime was his own statements to the police which were introduced in evidence and such statements were obtained by coercion and trickery practiced by the police. This contention was made by Johnson at his murder trial and was considered at great length by this Court in our Opinion in 372 Pa. The jury after proper instructions by the trial Judge rejected Johnson's contention, and this Court specifically rejected it and sustained the jury's verdict and sentence.

We have decided this case on the assumption that habeas corpus will lie. Habeas corpus formerly was a well defined and limited writ which a myriad of cases proclaimed was not a substitute for an appeal, or for a writ of error, or for a motion for a new trial, or for correction of trial errors: *Commonwealth ex rel. Watters v. Myers*, 406 Pa. 117, 176 A. 2d 448; *Commonwealth ex rel. Bolish v. Banmiller*, 396 Pa. 129, 151 A. 2d 480; *Commonwealth ex rel. Kennedy v. Myers*, 393 Pa. 535, 143 A. 2d 660; *Commonwealth ex rel. Ashmon v. Banmiller*, 391 Pa. 141, 137 A. 2d 236; *Commonwealth ex rel. Wilson v. Banmiller*, 393 Pa. 530, 143 A. 2d 657, and cases cited therein.

However, we have also judiciously held that if the record shows a trial or sentence which was so funda-

---

* We have considered this contention of Johnson's in the light of all the recent decisions of the Supreme Court of the United States, including *Fay v. Noia*, 372 U.S. 391; *Gideon v. Wainwright*, 372 U.S. 335 and *Townsend v. Sain*, 372 U.S. 293; none of which were cited or could have been cited by Johnson, but are convinced that Johnson has failed to bring himself within the principles or applicable tests laid down by the Court in any of its recent decisions.

mentally unfair as to amount to a denial of due process, or where the record shows that some basic fundamental error was committed which constituted a violation of due process or deprived a person of any of his Constitutional rights, relief may be sought and granted by habeas corpus: *Commonwealth ex rel. Wilson v. Banmiller*, 393 Pa., supra; *Commonwealth ex rel. Johnson v. Myers*, 402 Pa. 451, 460, 167 A. 2d 295; *Commonwealth ex rel. Butler v. Rundle*, 407 Pa. 535, 180 A. 2d 923. Cf. *Fay v. Noia*, 372 U. S., supra; *Gideon v. Wainwright*, 372 U. S., supra; *Townsend v. Sain*, 372 U. S., supra; *Townsend v. Burke*, 334 U. S. 736; *United States ex rel. Smith v. Baldi*, 344 U. S. 561; *Brown v. Allen*, 344 U. S. 443.

Order reversed and vacated, and petition for habeas corpus dismissed.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I would affirm the opinion of the court below granting the petition for writ of habeas corpus.

An examination of the entire record discloses that the prosecution had a very flimsy case against the defendant. As former Chief Justice CHARLES ALVIN JONES so aptly stated in his concurring opinion to the first *Johnson* case, "[t]he books will be searched in vain for a more startling example of a synthetically constructed case of murder against a suspect." *Commonwealth v. Johnson*, 368 Pa. 139, 148, 81 A. 2d 569, 573 (1951). I agree. It is abundantly clear that the prosecution would never have secured a conviction without the introduction in evidence of defendant's prior convictions.

The majority places considerable emphasis upon *Commonwealth v. Parker*, 294 Pa. 144, 143 Atl. 904 (1928), in which the validity of the split-verdict rule was upheld. As the majority correctly points out, this

rule has been subject to much criticism over the years. Finally, in *United States ex rel. Scoleri v. Banmiller*, 310 F. 2d 720 (3d Cir. 1962), cert. denied, 374 U. S. 828 (1963), the court of appeals for the third circuit disapproved the "Parker Rule" when it held under the particular facts and circumstances of that case that the introduction of prior convictions in evidence was violative of due process of law. Although it is doubtful whether the *Scoleri* decision should be applied to all cases involving the "Parker Rule", nevertheless the mood and tenor of *Scoleri* obliges us to scrutinize with care a finding of guilt which appears to be based on no more substantial evidence than a record of the defendant's prior convictions. Since the instant conviction is precisely that type of case, I must register my dissent.