UNITED STATES of America ex rel. Daniel BOLISH, Appellant,

v.

James F. MARONEY, Superintendent, State Correctional Institution, Pittsburgh, Pennsylvania.

No. 17292.

United States Court of Appeals Third Circuit.

Submitted on Briefs Dec. 5, 1968.

Decided April 24, 1969.

Daniel Bolish, pro se.

Joseph J. Cimino, Dist. Atty., Ralph P. Needle, Asst. Dist. Atty., Lackawanna County, Scranton, Pa., for appellee.

Before HASTIE, Chief Judge, and KALODNER and VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

This case challenges the denial of a Petition for a Writ of Habeas Corpus by the District Court order of April 28, 1967. A jury found relator guilty of murder in the first degree (N.T. 843), with the penalty of life imprisonment, in December 1955, and he complains of confinement in accordance with such verdict.[1]

After a careful review of the record, we have concluded that there is no merit in the contentions raised in subparagraphs 3(a), (c), (d), (e), (f), (g), and (h) of the Petition. See United States ex rel. Almeida v. Rundle, 383 F.2d 421 (3rd Cir. 1967), cert. den. 393 U.S. 863, 89 S.Ct. 144, 21 L.Ed.2d 131 (1968), and cases cited in footnote 1.[2]

█ Also, an examination of the trial record discloses that relator's contention in sub-paragraph 3(b) of his Petition that "the admission and application of past criminal records and testimony thereto" at his trial violated his constitutional rights must be denied. See Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Rundle v. Johnson, 386 U.S. 14, 87 S.Ct. 847, 17 L.Ed.2d 695 (1967).[3] These decisions make clear that no matter how many prior convictions are involved, their recitation to the jury is immaterial as long as the jury is charged that this evidence is to be considered only with respect to the penalty imposed in the event that the jury finds the defendant is guilty of the crime with which he is charged. The jury was properly charged that this evidence was to be considered only with respect to the penalty imposed in the event they found relator guilty of first degree murder[4] (N.T. 823, 827–828).

Applying the rationale of these 1967 decisions to this record, the jury, following the instruction quoted in footnote 4, only considered relator's past criminal

---

1. A five-page unreported Memorandum was filed by the District Court with this order, referring to the extensive prior litigation of relator in the state courts. See Commonwealth v. Bolish, 381 Pa. 500, 113 A.2d 464 (1955); Commonwealth v. Bolish, 391 Pa. 550, 138 A.2d 447, cert. den. 357 U.S. 931, 78 S.Ct. 1376, 2 L.Ed.2d 1373 (1958); Commonwealth ex rel. Bolish v. Banmiller, 396 Pa. 129, 151 A.2d 480, cert. den. 361 U.S. 898, 80 S.Ct. 201, 4 L.Ed.2d 153 (1959); Commonwealth ex rel. Bolish v. Rundle, 413 Pa. 512, 198 A.2d 311 (1964); Commonwealth ex rel. Bolish v. Rundle, 422 Pa. 608, 222 A.2d 923 (1966). The background facts are set forth in the first Supreme Court opinion reversing the conviction based on the verdict resulting from relator's first trial (381 Pa. 500, 113 A.2d 464).

2. It is noted that the Supreme Court of Pennsylvania carefully distinguished the factual situation presented by Bolish's case from those presented by the *Almeida* (362 Pa. 596, 68 A.2d 595 (1949)), Redline, and Thomas (382 Pa. 639, 117 A.2d 204 (1955)) cases, using this language in Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472, 473 (1958), which case is relied on by relator:

"The opinion for the court in the Thomas case relied for its principal authority on the decision in Almeida and also cited the more recent case of Commonwealth v. Bolish, 381 Pa. 500, 113 A.2d 464. But, Bolish is plainly distinguishable from Almeida, while the instant case, whose operative evidential elements are basically similar to those of the Thomas case, is distinguishable from both Almeida and Bolish."

3. The Supreme Court has held in these cases that the possibility of prejudice inherent in permitting the jury to know of the defendant's past convictions when it is considering his guilt or innocence is outweighed by the valid state interest, i. e., the convenience of trying both issues, guilt on the current charge and the extent of the sentence (death or life imprisonment), at the same time. Cf. United States ex rel. Marino v. Myers, 383 F.2d 985 (3rd Cir. 1967).

4. The jury was charged as follows at N.T. 823 and 827:

"There is one part of the evidence which I now warn you has nothing to do with the question as to whether Bolish is guilty or innocent of the crime charged, and that is the evidence given by the Clerk of the Courts and Policemen Haggerty, Jones and Pope as to the former criminal record of the defendant. The only legal purpose of such

record[5] in deciding whether his punishment should be death or life imprisonment. In *Johnson, supra,* where the prosecutor's only evidence of guilt was a confession and re-enactment of the crime by a defendant with a 7th grade education when in custody and without counsel and the jury was informed, prior to returning its guilty verdict and sentence of life imprisonment, of a prior conviction for an offense involving facts with "a striking similarity to the methods used in the present case" (p. 698 of 243 F.Supp.), the Supreme Court of the United States reversed the grant of a petition for a writ of habeas corpus, relying on *Spencer, supra.*[6] See United States ex rel. Johnson v. Rundle, 243 F.Supp.

---

evidence is to assist you in determining the penalty to be placed on the defendant in the event you find him guilty of murder in the first degree.

\* \* \* \* \*

"If you find the defendant guilty of murder in the first degree, you will then proceed to fix the penalty and state it in your verdict. The penalty for murder in the first degree to be fixed by the jury is either imprisonment for life or to suffer death in the manner provided by law, and the penalty to be imposed is within the sole discretion of the jury.

"In determining the penalty, you are entitled to consider the evidence presented by the Commonwealth of the previous convictions of this defendant in 1929 for three offenses of burglary in 1932 for the crime of burglary, and in 1939 for the crime of robbery. This evidence is introduced for the sole purpose of informing you as to the manner of man this defendant is and as information to you in connection with your exercise of discretion as to the penalty. But this discretion as to the penalty imposed, if you find the defendant guilty of murder in the first degree, is solely that, of the jury.

"I think it fair to say here that as to the evidence of the crime of which Bolish was convicted in 1929, he was then at an age which, if a similar crime should be committed now, would be considered as juvenile delinquency and not chargeable as a crime under the Criminal Code. At that time the age limit for juvenile delinquency was sixteen. He was somewhat over that, but under the age which is now considered to be that of a juvenile, the age of eighteen. In other words, if his criminal record were to be now considered, the record as a juvenile delinquent would not be used against him in that connection. However, the evidence is there as to the crimes committed at the other specific times."

5. Here the prior convictions were introduced at relator's trial, over his objections, by means of testimony of the Chief Deputy Clerk of Courts of Lackawanna County and of the police officers who prosecuted the charges (N.T. 684–692 of Court of Oyer & Terminer, Lackawanna County, Oct. Term 1953, No. 17, Trial of November-December 1955). They testified to the following prior criminal proceedings: (1) a plea of guilty to burglary in 1929 and sentence not to exceed 10 years in the Pennsylvania Industrial Reformatory (#31, Jan. Term 1929, Court of Oyer & Terminer, Lackawanna County); (2) a plea of guilty to breaking and entering with intent to steal in 1932 and sentence of three to six years in the State Penitentiary (#2, Dec. Term 1932, Court of Oyer & Terminer, Lackawanna County); and (3) a trial and conviction for robbery in 1939, with sentence of five to ten years in the State Penitentiary (#10, Oct. Term 1938, Court of Oyer & Terminer, Lackawanna County). The record of the 1938 proceedings evidences that relator was represented by counsel at the trial. The records of the 1929 and 1932 guilty pleas, however, are apparently silent as to whether relator had counsel.

6. It is noted that in *Spencer, supra,* the court pointed out in footnote 2, at p. 557 of 385 U.S., at p. 650 of 87 S.Ct., that in Texas (as in Pennsylvania—see Act of December 1, 1959, P.L. 1621, 18 P.S. § 4701), a law passed subsequent to the convictions in that case and presently effective provides that "the jury is not given the recidivist issue until it has first found the defendant guilty under the principal charge." The court used this language in the *Spencer* case at 564, 87 S.Ct. at 654:

"\* \* \* In the face of the legitimate state purpose and the long-standing and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases. As Mr. Justice Cardozo had occasion to remark, a state rule of law

695 (E.D.Pa.1964), aff'd 349 F.2d 416 (3rd Cir. 1965).

▉▉ On the issue of the extent of the sentence, the jury was entitled to know of the armed robbery conviction. The error in permitting the jury to know of the other two convictions had no prejudicial effect on its determination of the sentence, since the defendant received the minimum permissible sentence. In this respect, the decision presented by this case differs from that before the court in Burgett v. Texas, *supra,* where the defendant did not receive the minimum permissible sentence.[7] Cf. Chapman v. California, 386 U.S. 18, 21–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The District Court order of April 28, 1967, will be affirmed.

'does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar.' "

7. In his brief on appeal, relator attempts to bring himself within the ambit of Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), alleging there was no record indication whether he was represented by counsel during the events leading to the prior convictions. The Supreme Court held in Burgett that where the records of a prior conviction "on their face raise a presumption that petitioner

HASTIE, Chief Judge (concurring).

Were we free from constraint imposed by higher authority, I would find that in the circumstances of this case the introduction of prior convictions into evidence at the petitioner's trial was inconsistent with the due process requirement of fundamental fairness. However, in a similar case presenting an even stronger showing of unfairness and prejudice, United States ex rel. Johnson v. Rundle, E.D.Pa.1964, 243 F.Supp. 695, aff'd. per curiam, 3d Cir. 1965, 349 F.2d 416, the Supreme Court reversed per curiam our allowance of habeas corpus. Rundle v. Johnson, 1967, 386 U.S. 14, 87 S.Ct. 847, 17 L.Ed.2d 695. That decision, which in my view extends the reach of Spencer v. Texas, 1967, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606, leaves us no alternative but to deny relief in this case.

was denied his right to counsel" at trial, the right secured by Gideon v. Wainwright, 372 U.S. 335, 82 S.Ct. 792, 9 L.Ed.2d 799 (1963), was denied anew and the admission of the prior conviction was "inherently prejudicial." 389 U.S. at 115–116, 88 S.Ct. 258. The court said *Spencer, supra,* was not relevant because the prior convictions there were not presumptively void. 389 U.S. 116, 88 S.Ct. 258. It is noted that in *Burgett, supra,* 389 U.S., at 110, 88 S.Ct., at 259, the "jury fixed the punishment at 10 years," whereas the minimum penalty was two years.