UNITED STATES of America ex rel.
John LOWRY

v.

David N. MYERS, Superintendent, State Correctional Institution, Graterford, Pennsylvania.

Commonwealth of Pennsylvania,
Appellant.

No. 15500.

United States Court of Appeals
Third Circuit.

Argued Feb. 4, 1966.

Decided July 29, 1966.

Ward F. Clark, First Asst. Dist. Atty., Doylestown, Pa. (William J. Carlin, Dist. Atty., Doylestown, Pa., on the brief), for appellant.

Melvin Rubin, Philadelphia, Pa., for appellee.

Before STALEY, SMITH and FREEDMAN, Circuit Judges.

FREEDMAN, Circuit Judge.

The Commonwealth appeals from the order of the district court granting relator's petition for a writ of habeas corpus.[1]

Relator was convicted in the state court in Bucks County, Pennsylvania, of first degree murder. Pursuant to the Pennsylvania practice which prevailed at that time (Penal Code of June 24, 1939, P.L. 872, § 701, 18 Purdon's Pa.Stat.Annot. § 4701, based on Act of May 14, 1925, P.L. 759, § 1) the jury fixed the penalty at life imprisonment and he was sentenced accordingly. In the state courts, where he exhausted his remedies[2] and in the court below, the ground of his application was that he had been denied due process of law at his trial in 1951 by the admission in evidence over his objection of his prior criminal record.

Relator had been indicted jointly with two other defendants for a felonious killing during the perpetration of an armed robbery. Each of the defendants was separately tried. At relator's trial the Commonwealth introduced a statement he had given to the police in which he admitted that he drove the other two defendants to and from the scene of the crime, but denied knowledge of their purpose to rob. The Commonwealth's case also showed that the car was driven rapidly and without lights from the scene of the robbery; that after the event relator appeared at a diner and inquired about the commotion, saying, contrary to what appeared in his statement, that he had been asleep; that he then asked two waitresses if they had seen the car, and when one replied that she had and the other that she had not, he responded to the latter, "You are a smart girl, Pat, to keep your mouth shut."

The Commonwealth then offered in evidence the defendant's prior criminal record, and when the court inquired whether it intended to ask for the death penalty the district attorney unequivocal-

1. United States ex rel. Lowry v. Myers, 242 F.Supp. 477 (E.D.Pa.1965).

2. Commonwealth ex rel. Lowry v. Myers, 416 Pa. 631, 207 A.2d 589 (1965).

ly replied in the affirmative and stated in the jury's presence that the defendant's criminal record was offered solely for the jury's consideration in arriving at the penalty in the event they found the defendant guilty, and not for the purpose of assisting them in determining his guilt or innocence. The defendant's objection was overruled and the so-called criminal record was admitted in evidence. The record related to criminal proceedings in Philadelphia and Montgomery Counties. The Montgomery County record consisted of two convictions of larceny and one acquittal of a charge of operating a motor vehicle without the consent of the owner. The Philadelphia County record contained ten indictments. Of these, there were four indictments on which relator had been found not guilty, two for larceny of an automobile and receiving stolen goods, and two for operating a motor vehicle without the consent of the owner. He had pleaded guilty to four indictments of larceny and receiving stolen goods, and to two charging operation of a motor vehicle without the consent of the owner.

After the evidence on both sides had been closed the district attorney in the course of his summation to the jury declared that the Commonwealth was not seeking the death penalty but that this was not binding upon the jury. At the request of defendant's counsel this statement of the district attorney to the jury was then formally recorded in the transcript.[3] In the course of its charge the court reminded the jury of the limitation expressed by the district attorney when he offered the criminal record in evidence,—that it was not for the purpose of influencing the jury in determining the defendant's guilt or innocence. The court then said that the criminal record was admitted only so that the jury would have it if it became necessary to pass upon the penalty to be inflicted on the defendant. It then went on to say that inasmuch as the Commonwealth was not pressing for the death penalty it would make no further comment on this subject except to remind the jury that it was not to consider the criminal record in determining the defendant's guilt because it was not offered for that purpose and had no place in the trial for that purpose. The court also instructed the jury that as it viewed the evidence there could be one of two verdicts, either guilty of murder in the first degree with life imprisonment or not guilty. The jury was then instructed that if it concluded that defendant was guilty of murder in the first degree it should fix the penalty at life imprisonment. This instruction later was repeated.

The criminal record was admitted under the then prevailing practice in Pennsylvania, approved in Commonweath v. Parker, 294 Pa. 144, 143 A. 904 (1928), which required a jury on finding a defendant guilty of murder in the first degree to determine at the same time whether the penalty should be death or life imprisonment. The *Parker* case also held that in order to make the choice of penalty between death or life imprisonment the jury was entitled to have before it whatever evidence would tend to indicate what kind of a man the defendant was, notwithstanding the inherent likelihood that such evidence, although relevant for determining sentence might seriously affect its determination of guilt. It was because of the dissatisfaction with this feature of the rule (see 1 Wigmore, Evidence (3d Ed. 1940), § 194b) that Pennsylvania adopted the so-called Split-Verdict Act of December 1, 1959, P.L. 1621, § 1, 18 Purdon's Pa.Stat.Annot. § 4701, which altered the prior Pennsylvania law by providing for a separate hearing on penalty in the event of a finding of guilt.

The admission of so much of relator's record as consisted of charges of

which he was never convicted was clear error. Even under the Act of 1925 and the succeeding Penal Code of 1939 it was established that although the record of a defendant's prior convictions was admissible in the one trial in which the jury determined guilt and fixed the penalty, nevertheless arrests or indictments not followed by conviction were inadmissible. Commonwealth v. Jones, 355 Pa. 594, 597–598, 50 A.2d 342 (1947). It is unnecessary, however, to consider whether this violation of a fundamental principle of Pennsylvania's law of evidence might be deemed an independent violation of due process, because it is absorbed in the question of the effect of the admission of the convictions of prior crimes. We shall therefore deal with the criminal record hereafter as though it consisted exclusively of convictions.

In United States ex rel. Scoleri v. Banmiller, 310 F.2d 720 (3 Cir. 1962), cert. denied, 374 U.S. 828, 83 S.Ct. 1866, 10 L.Ed.2d 1051 (1963), we held that a conviction of murder in the first degree violated due process because of the admission in evidence of the defendant's criminal record consisting of twenty-five separate convictions or pleas of guilty of armed robbery and burglary, notwithstanding the trial judge's admonition to the jury that it was to be considered solely in fixing the penalty. We there limited United States ex rel. Thompson v. Price, 258 F.2d 918 (3 Cir. 1958), cert. denied, 358 U.S. 922, 77 S.Ct. 295, 3 L.Ed. 2d 241, to cases in which the defendant had not objected to the admission of such evidence. Chief Judge Biggs, speaking for the court en banc, said: "[W]e cannot believe that the procedural scheme imposed by Section 701 [of the Penal Code] * * * and the 'Parker Rule' would permit the jurors to put the knowledge of Scoleri's twenty-five convictions or pleas of guilty out of their minds while considering his guilt or innocence. Certainly such a feat of psychological wizardry verges on the impossible even for berobed judges. It is not reasonable · to suppose that it could have been accomplished by twelve laymen brought together as a jury. The admission of such evidence in Scoleri's trial must therefore be deemed to have been gravely prejudicial. We conclude that Scoleri's trial in this respect was so fundamentally unjust as to cause the trial court to lose jurisdiction. * * *" (310 F.2d p. 725).

The Commonwealth urges that *Scoleri* is inapplicable because the prior convictions admitted in evidence there were more serious in nature and greater in number. Rather, this case is said to be like United States ex rel. Rucker v. Myers, 311 F.2d 311 (3 Cir. 1962), cert. denied, 374 U.S. 844, 83 S.Ct. 1901, 10 L.Ed.2d 1064 (1963), where we held that due process had not been violated by proof of a defendant's prior convictions of involuntary manslaughter and aggravated assault and battery, and where we noted the relative number of convictions as a distinguishing fact.

■■ *Scoleri* and *Rucker* are not to be read, however, as holding that the *Parker* rule does not offend due process unless a multitude of criminal convictions is introduced against a defendant. Due process is denied by the introduction of a defendant's criminal record if it impairs his right to a fair determination by the jury of the question of his guilt. In the absence of circumstances of reprehensible conduct by the prosecution [4] or by the law enforcement agencies, which, as Judge Hastie said in the *Rucker* case, are ground for vacation of a conviction without any showing of prejudice, the test is whether in all of the circumstances of the particular case it can be said that the defendant may have been seriously prejudiced by the introduction of his prior criminal record. This question must be dealt with realistically and consideration must be given to all those elements which

---

4. It is unnecessary, in view of the conclusion we have reached, to consider the effect under this test of the district attorney's about face after his assurance to the court that he was pressing for the death penalty in order to obtain the admission of the criminal record.

are relevant to a fair appraisal of the circumstances, such as the existence of a substantial issue of guilt and the nature as well as the number of the prior convictions. See, e. g., United States ex rel. Johnson v. Rundle, 243 F.Supp. 695 (E.D. Pa. 1964), aff'd, 349 F.2d 416 (3 Cir. 1965), cert. pending, S.Ct. Oct. Term 1966, No. 14.[5] See also Commonwealth ex rel. Marino v. Myers, 419 Pa. 448, 214 A.2d 491 (1965) ; Commonwealth ex rel. Gist v. Rundle, 419 Pa. 458, 214 A.2d 496 (1965).

A consideration of these factors shows that the present case is the very opposite of *Rucker*. There the relator did not deny having committed the murder, but presented as his only defense his voluntary intoxication, which admittedly had no legal relevance; the only real question was whether the jury should fix the penalty at death or life imprisonment. We, therefore, found that the admission of the criminal record, which was properly before the jury in the determination of penalty, did the relator no harm. Here the issue of guilt was substantial. In his statement to the police, which was received in evidence, relator had denied any criminal purpose on his part and any knowledge of such a purpose by those who were with him. There was no evidence that he was present at the scene of the crime. The record of thirteen arrests and four pleas of guilty and two convictions, all on offenses relating to theft of property, similar to the felony giving rise to the murder, must have gravely prejudiced the defendant before the jury.

There is added reason for condemning the prejudicial evidence here. The *Parker* rule was deemed unavoidable in order to afford the jury adequate means of determining the penalty. Here, however, the alternative of the death penalty was removed when the district attorney stated that he would not press for the death penalty and the court instructed the jury that there could be only one of two verdicts: either murder in the first degree with life imprisonment or not guilty, thus submitting to the jury only a question as to which the evidence was admittedly impermissible. It is true that the Pennsylvania Supreme Court on relator's appeal from his conviction found the district attorney's withdrawal of his demand for the death penalty irrelevant. The ground for this conclusion was that the statute conferred on the jury alone the right and power to determine whether the penalty should be death or life imprisonment, and it therefore could have disregarded any recommendation made by the district attorney or even the court. Commonwealth v. Lowry, 374 Pa. 594, 603, 98 A. 2d 733 (1953), cert. denied, 347 U.S. 914, 74 S.Ct. 479, 98 L.Ed. 1070 (1954). We accept for present purposes the Pennsylvania Supreme Court's statement. Even so, the fundamental injustice of the *Parker* rule was intensified by the fact that the criminal record was in evidence and the jury was instructed in a manner which excluded any choice between penalties. So far as the jury took the law from the court, the evidence was meaningless unless considered on the question of guilt or innocence. Since it was before the jury it must be obvious that it affected their decision on the question of relator's guilt. The legal fact that the jury could have fixed Lowry's sentence at death therefore cannot obviate this harm.

The order of the court below will be affirmed.

---

5. See also Spencer v. Texas, 389 S.W.2d 304 (Tex.Ct.Crim.App.1965), consideration of question of jurisdiction postponed, 382 U.S. 1022, 86 S.Ct. 649, 15 L.Ed.2d 537 (1966) ; Bell v. Texas, 387 S.W.2d 411 (Tex.Ct.Crim.App.1965), cert. granted, 382 U.S. 1023, 86 S.Ct. 649, 15 L.Ed. 2d 538 (1966) ; Reed v. Beto, 343 F.2d 723 (5 Cir. 1965), cert. granted, 382 U.S. 1025, 86 S.Ct. 649, 15 L.Ed.2d 539 (1966).