**Bernard ROSS, Appellant,**

v.

**James F. MARONEY, Superintendent of the Correctional Institution at Pittsburgh.**

**No. 15400.**

United States Court of Appeals
Third Circuit.

Argued May 2, 1966.

Reargued Dec. 21, 1966.

Decided Jan. 24, 1967.

Thomas A. Harper, Pittsburgh, Pa., for appellant.

Edwin J. Martin, Asst. Dist. Atty., Pittsburgh, Pa. (Robert W. Duggan, Dist. Atty. of Allegheny County, Pittsburgh, Pa., on the brief), for appellee.

Before STALEY, Chief Judge, and McLAUGHLIN, KALODNER, HASTIE, FORMAN, GANEY, SMITH, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

This is an appeal from the denial of a petition for a writ of habeas corpus by the United States District Court for the Western District of Pennsylvania.

The sole question involved, having any merit, is whether or not the admission of testimony on behalf of the Commonwealth, showing that the defendant committed another homicide at the time he committed the instant one, the shootings being in rapid succession, was a denial of due process of law, as being a failure to observe fundamental principles of fairness, essential to the concept of justice.

The facts, briefly, are these: The defendant who was married, but not living with his wife, began to live with the decedent, Eva Mae Boston, in 1954, in Clairton, Pennsylvania. The decedent was married, but, likewise, not living with her husband. At the time they began living together, Mrs. Boston had three boys and subsequently two daughters were born to her and the defendant. In September of 1961, the defendant left the apartment where he had been living with Mrs. Boston, but, very frequently, he would return and would continually quarrel with her, as well as with the children. There was testimony that on one occasion Daniel Boston, Jr., also deceased, stepped between his mother and the defendant while they were fighting,

at which time the defendant threatened her with a knife, and, on another occasion, the decedent, Daniel Boston, threatened to call the police when the defendant, while fighting with his mother, pulled out a gun and threatened to kill him with it.

On the morning of November 11, 1962, according to the Commonwealth's testimony, the defendant came to the apartment of Mrs. Boston and began quarreling with her. He made such a commotion that Daniel Boston, Jr., age seventeen at the time and who was in bed, got up and told the defendant to stop fighting and leave his mother alone, as well as to "Stop coming around here and trying to run all over us." and "If you want somebody to fight, fight me and let my mother alone." As a result of this altercation, the defendant then said, "I am going to kill all of you." He then pulled out a gun and shot Daniel Boston in the chest and he stumbled through the living-room and immediately fell dead. Defendant then wheeled around and fired a shot at Russell Boston, who was then age fourteen, who ran out of the house, lost consciousness, fell on the steps, was rushed to a hospital and miraculously survived, though only after a very long period of convalescence. Later, Mrs. Boston's body was found on the floor of the bedroom by the police. There was no one who witnessed the actual killing of Mrs. Boston, but, when apprehended, the defendant admitted that he had killed her. At the trial for the death of Mrs. Boston, the defendant admitted that he had the gun with him on the morning of the shooting, but said he was going to get rid of it and was going to give it to the boys' grandfather.

In order to buttress the Commonwealth's contention that the killing of Mrs. Boston was premeditated, conscious and deliberate, as opposed to it being accidental or in self-defense, and lacking in any cause, therefor whatsoever, the Commonwealth called, over the objection of the defendant, the coroner's physician, a pathologist, who testified that Daniel's death was caused by a gunshot wound through the heart. It was the Commonwealth's contention that the reason for calling the pathologist, coroner's physician, was, as has been indicated, to show the absolute premeditation involved in the killing, as implementing his assertion that "I am going to kill all of you." Accordingly, the execution of this threat was a vital part of the Commonwealth's case to show first-degree murder in the killing, rather than second-degree or manslaughter.

The appellee presses for consideration two arguments, (1) that the admission of the testimony of Daniel Boston's death was wholly irrelevant and "that its admission was highly prejudicial under the circumstances of this case.", and (2) while the evidence was relevant, its admissibility was so prejudicial to the defendant, that it outweighed any probative value thereof. In support of the first contention, appellee cites Commonwealth v. Gidaro, 363 Pa. 472, 70 A.2d 359. In that case, there was no question involved of a multiple killing and it concerned itself entirely with whether or not the killing by the appellant of one Michael Matzura, the decedent, was done with the specific intention on the part of the appellant to take the decedent's life. It was the contention of the appellant that the inference of specific intent to take life was permissible only where it was established that the bullet entered directly into a vital organ, which the court rejected as a point for charge and which was the subject matter of the appeal. However, in affirming the trial court, it stated that this contention of the appellant had been laid to rest in Commonwealth v. Kluska, 333 Pa. 65, 3 A.2d 398, where the trial judge instructed the jury to the same effect as the appellant here contends for and the case was reversed as prejudicial error, and asserted 363 Pa. at p. 478, 70 A.2d at p. 362 *"Proof that the bullet entered the body at the exact location of a vital organ or part was not required."*, (italics ours), and, further, on p. 479, 70 A.2d at p. 362 the court stated, "The only requirement is that there be sufficient

evidence to justify the jury's verdict which imports a finding of specific intent to kill." Accordingly, this case merely states that it is not necessary to show that the shot fired from a gun entered a vital organ of decedent's body. Here, there was no question whatsoever as to whether or not the bullet entered a vital part of Daniel Boston's body and nowhere it intimates that the killing of an individual may not be shown and is, therefore, limited to the rejection of the irrebuttable presumption that use of a deadly weapon upon the vital part of the body of another gives rise to an intention to kill.

The real question posed under the view here taken is whether the introduction of the killing of Daniel Boston was irrelevant and, if so, was its admission a trespassing of defendant's constitutional rights. We shall first take up the question of relevancy.

■ The law is well-settled in Pennsylvania that evidence of the commission of a crime, other than the one for which a defendant is being tried, is not generally admissible. However, like most rules, there exist certain well-defined exceptions, for example, when more than one person is killed by the accused either as part of a common plan, design or motive, or as part of the res gestae, or as part of a sequence of acts related to the crime, or as part of a chain of criminal acts, and the exception to the rule is deeply embedded in the law of Pennsylvania. Commonwealth v. Gockley, 411 Pa. 437, 192 A.2d 693; Commonwealth v. Wable, 382 Pa. 80, 114 A.2d 334; Commonwealth v. Williams, 307 Pa. 134, 160 A. 602; Commonwealth v. Raymond, 412 Pa. 194, 194 A.2d 150; Commonwealth v. Burdell, 380 Pa. 43, 110 A.2d 193; Commonwealth v. Kline, 361 Pa. 434, 65 A.2d 348; Commonwealth v. Petrillo, 338 Pa. 65, 12 A.2d 317; Commonwealth v. Kluska, 333 Pa. 65, 3 A.2d 398.

■ Since it would serve no useful purpose to give the factual content of each of these cases, to show admissibility in the instant case, one will suffice. In Commonwealth v. Wable, supra, the Commonwealth proved that one Woodward, a truck driver, was murdered while asleep in the cab of his truck on the Pennsylvania Turnpike, and that three days later, one Pitts, a truck driver, was similarly murdered while asleep in his cab on the Pennsylvania Turnpike, and three days thereafter, one Shepard was shot while asleep in his cab on the Pennsylvania Turnpike in Ohio. At the trial for the murder of Pitts, Shepard identified the defendant as the man who had shot him and the court admitted evidence relating to the murder of Woodward and the shooting of Shepard, and, speaking through Chief Justice Stern, the Court said at 382 Pa. p. 84, 114 A.2d p. 336: " * * * [T]hat evidence of other crimes is admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the other or * * *. A veritable multitude of authorities in our appellate courts enunciate, albeit in varying language, this familiar principle.[2] " (Many authorities cited in footnote 2 are omitted.) It seems abundantly clear that under the law of Pennsylvania other crimes including, as above, that of murder, may be shown where the killing tends to prove a plan or design embracing the commission of two or more crimes and especially so, as when here, the killing is done in the carrying out of a threat so to do.

■ The same rule is equally applicable under the Federal authorities. In Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166, the Court held that admissibility in a murder trial of evidence of another similar crime to establish intent, design and system on the part of the accused is left by the Fourteenth Amendment to be determined by the State law and the State courts. In this case, the state of California indicted the defendant for the killing of his wife. At the trial, the death of his former wife was introduced into evidence and the testimony was admitted " * * *

[O]n the widely recognized principle that similar but disconnected acts may be shown to establish intent, design, and system. The Fourteenth Amendment leaves California free to adopt a rule of relevance which the court below holds was applied here in accordance with the State's law." (p. 227, 62 S.Ct. p. 286.) Here, the Court had no hesitancy in admitting the killing and death of the defendant's former wife nor did the admission of that testimony contravene or be considered violative of any due process by way of any constitutional right of the defendant, nor was there any manifest injustice done in its admission.

■ To the same effect is Ciucci v. State of Illinois, 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983. Here, the petitioner was charged in four indictments with the murder of his wife and three children. In three successive trials, the petitioner was found guilty of first-degree murder of his wife and two of his children. At each of the trials, the prosecution introduced into evidence details of all four deaths. At the first two trials involving the death of the wife and one of the children, the jury fixed the penalty at twenty and forty-five years imprisonment, respectively, and at the third trial, involving the death of a second child, the penalty was fixed at death. The Supreme Court of Illinois affirmed the conviction, certiorari was granted in order to consider petitioner's claim that this third trial violated the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. The Court stated at p. 572, 78 S.Ct. at p. 840: "It is conceded that under Illinois law each of the murders, although apparently taking place at the same time, constituted a separate crime and it is undisputed that evidence of the entire occurrence was relevant in each of the three prosecutions." The Court proceeds to state further, at p. 573, 78 S.Ct. at p. 840: "The five members of the Court who join in this opinion are in agreement that upon the record as it stands no violation of due process has been shown. The State was constitutionally entitled to prosecute these individual offenses singly at separate trials, and to utilize therein all relevant evidence, in the absence of proof establishing that such a course of action entailed fundamental unfairness." See United States v. Neal, 3 Cir., 344 F.2d 254, 255; Hughes v. United States, 1 Cir., 320 F. 2d 459, 462. Accordingly, since the admission of the prior killing in the instant case by the Supreme Court of Pennsylvania was held to be relevant under the law of Pennsylvania, as indicated above by the cases, it, likewise, violated no constitutional right of the defendant.

■ The second contention of the appellant holds, as indicated, that, while assuming the evidence was relevant, nevertheless the admissibility of it was so prejudicial to him as to affect the fairness of the trial. In connection therewith, he cites United States ex rel. Scoleri v. Banmiller, 3 Cir., 310 F.2d 720, 724, and United States ex rel. Lowry v. Myers, 3 Cir., 364 F.2d 297. In neither of these cases was the evidence offered as being relevant to the guilt of the accused. The formal introduction of Scoleri's record of twenty-five convictions or pleas of guilty to armed robbery, etc., were explained by the trial judge as only going to the jury's separate function of fixing the penalty at life imprisonment or death. The court held that it was most improper to permit the jury to put the knowledge of his convictions aside while considering his guilt or innocence. In succinct language, the court stated 310 F.2d at p. 725: "Certainly such a feat of psychological wizardry verges on the impossible even for berobed judges. It is not reasonable to suppose that it could have been accomplished by twelve laymen brought together as a jury. The admission of such evidence in Scoleri's trial must therefore be deemed to have been gravely prejudicial. We conclude that Scoleri's trial in this respect was so fundamentally unjust as to cause the trial court to lose jurisdiction. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461." Here, it will be seen that the introduction of twenty-five convic-

tions in order to fix the penalty of life or death is, in no wise, apposite to the introduction of the testimony showing the killing of Daniel Boston whose relevancy to intent, design and motive went directly to the guilt or innocence of the defendant. United States ex rel. Lowry v. Myers, supra, is in the same vein. There, as in the *Scoleri* case, supra, the record of the relator was offered for the jury's consideration in arriving at the penalty in the event they found the defendant guilty, and not for the purpose of assisting them in determining his guilt or innocence. The defendant's objection was overruled and the so-called criminal record was admitted in evidence. The record related to criminal proceedings in Philadelphia and Montgomery Counties. The Montgomery County record consisted of two convictions of larceny and one acquittal of a charge of operating a motor vehicle without the consent of the owner. The Philadelphia County record contained ten indictments, to four of which he had pleaded guilty of larceny in receiving stolen goods, and to two showing operation of a motor vehicle without the consent of the owner. This court held that the admission of the relator's record was, under the circumstances, prejudicial error as it concerned only the penalty and did not go to the guilt or innocence of the relator and, although the relator had not as bad a record as Scoleri, the offending of due process is not dependent upon the number of criminal convictions introduced, but rather whether it impairs his right to a fair determination by the jury as to his guilt. Here again, there was no relevancy of this testimony as to the guilt or innocence of the relator.

The defendant further argues that the weight to be given Ciucci v. State of Illinois, supra, many times more far-reaching than the instant case in that three killings were shown, and alleges, in extenuation thereof, that the decision was beclouded by a number of articles in a Chicago newspaper after the first and second trials, complaining of dissatisfaction with the sentences imposed thereon.

However, the court takes pains to specifically point out, as earlier adverted to, "The five members of the Court who join in this opinion are in agreement that upon the record as it stands no violation of due process has been shown." Here, the newspaper articles appearing in the Chicago papers of the first and second trials were not made part of the record, they were not considered by the state courts and they could not be considered in that court. It thus appears that squarely on the record the court considered only the constitutional question involved and held that there was no violation of due process in the showing of the respective killings.

After a careful review of the record, the judgment of the District Court will be affirmed.

HASTIE, Circuit Judge (concurring).

The argument of fundamental unfairness presented by the dissenting opinion here is impressive. However, unlike the dissenters, I think the essential objections to the admission of evidence of the death of a victim of the affray, other than the one for whose murder the accused was on trial, were no more valid here than in Ciucci v. State of Illinois, 1958, 356 U.S. 571, 78 S.Ct. 839. So, believing that the *Ciucci* case authoritatively decided the constitutional question presented by this appeal, I concur in the affirmance of the judgment of the district court.

WILLIAM F. SMITH, Circuit Judge, asks that his concurrence in these views be recorded.

FREEDMAN, Circuit Judge (dissenting).

This is a capital case in which the Commonwealth sought the death penalty from the beginning. In such a case it was essential that appellant's rights should be carefully safeguarded in the admission of evidence. Appellant had conceded that he had shot Mrs. Boston, and the sole issue in the case was his premeditation in her killing. While evidence of the circumstances involving the

shooting of Daniel and Russell Boston, the weapon used and the aim of the shots fired at them, was relevant and admissible on the issue of premeditation (Commonwealth v. Wable, 382 Pa. 80, 114 A.2d 334 (1955)), evidence of the *resulting death* of Daniel Boston had no probative value on that issue. Daniel Boston's death from his wounds no more established premeditation than Russell Boston's recovery negated it. It is difficult enough in a case such as this to prevent a passionate feeling from invading the calm which should surround the jury's deliberation, because of the direct evidence of the crime of which a defendant is accused. It was all the more necessary therefore in order to avoid a complete breakdown of a fair trial that evidence of Daniel's resulting death, which was completely devoid of probative significance on the issue of premeditation in the killing of Mrs. Boston, should have been excluded. It was highly prejudicial to appellant, for it loaded on the jury the horror at his responsibility for multiple killings. Moreover, the prejudice inherent in the disclosure of Daniel's death was aggravated here by the numerous references to it at the trial, which could not fail to add to the prejudice against appellant. The Coroner was permitted to testify to his inquest on Daniel's death, the Deputy Coroner gave testimony regarding the removal of Daniel's body, a police cfficer testified that he saw Daniel lying wounded but alive on the landing and that he died on the way to the hospital and an uncle was permitted to state his relationship to Daniel and Daniel's age at the time of his death. Finally, the Coroner's pathologist was permitted to give the details of his autopsy on Daniel's body and the cause of his death.

In these circumstances, I would hold that appellant was denied a fair trial. For the prejudice which he suffered from this evidence necessarily was substantial and its introduction, on any realistic consideration, was fundamentally unfair. It is inconceivable to me that appellant could have had a fair assess-ment of his defense to the charge of murdering his "common law" wife by a jury which had been informed and was constantly reminded that he had also killed her son. For the jury to segregate the two homicides and to obliterate its knowledge of the death of Daniel in determining appellant's guilt for the killing of Mrs. Boston would have been impossible. As Chief Judge Biggs wrote for the court en banc in United States ex rel. Scoleri v. Banmiller, 310 F.2d 720, 725 (3 Cir. 1962), cert. denied, 374 U.S. 828, 83 S.Ct. 1866, 10 L.Ed.2d 1051 (1963): "Certainly such a feat of psychological wizardry verges on the impossible even for berobed judges. It is not reasonable to suppose that it could have been accomplished by twelve laymen brought together as a jury." See also Jackson v. Denno, 378 U.S. 368, 388–389, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

It is true that the Supreme Court of Pennsylvania considered and rejected appellant's objection that the evidence of the death of Daniel was irrelevant, once on his original appeal from his conviction (Commonwealth v. Ross, 413 Pa. 35, 39–44, 195 A.2d 81 (1963)) and later on his appeal from the denial of his application for habeas corpus. Commonwealth ex rel. Ross v. Maroney, 416 Pa. 86, 89, 204 A.2d 756 (1964). It was of the view that the evidence of Daniel's death was properly admitted because it was "an essential inseparable part and parcel of relator's killing of Mrs. Boston and was admissible for that reason" (416 Pa. at 89, 204 A.2d at 757), and was also admissible as "part of a common plan, design, or motive, or as part of the res gestae or as part of a sequence of acts related to the crime or as part of a chain of criminal acts." (413 Pa. at 40, 195 A.2d at 83) Of course, a federal court has no authority to lay down general rules of evidence for the conduct of state trials. But state court rulings on the admissibility of evidence do not foreclose a federal court's determination of the constitutional question whether in the light of the surrounding circumstances the admission of evidence in a

state court trial has deprived a defendant of due process of law.

In the present case it is not necessary to adopt a principle of balancing the prejudicial character of relevant evidence against its probative weight. Compare Burns v. Beto, 371 F.2d 598 (5 Cir. 1966). We are dealing here with evidence utterly lacking in probative value in view of the issues which were contested at the trial. The present case, therefore, is well within the power we have already exercised in reviewing the admissibility of evidence in state court trials in determining the validity of a claim of violation of due process. In United States ex rel. Scoleri v. Banmiller, supra, and United States ex rel. Lowry v. Myers, 364 F.2d 297 (3 Cir. 1966) we held that due process was denied by the admission into evidence of prior unrelated criminal convictions, because they prejudicially affected the determination of guilt even though they were offered only for the secondary purpose of determining penalty. Both *Scoleri* and *Lowry* stand for a more expansive rule of federal court review than would be necessary in the present case, for the evidence of prior unrelated criminal convictions in those cases, although offered only for the purpose of fixing penalty, had probative value on the underlying question of guilt. The reason for excluding such evidence, as the Supreme Court said in Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948), was not because it lacked probative value, but because practical experience has taught us that only in this way is it possible to prevent undue prejudice to a defendant. In the present case, the evidence of Daniel's death lacks even this relation to the issue of premeditation in the killing of Mrs. Boston.

I do not believe that we are foreclosed by Ciucci v. State of Illinois, 356 U.S. 571, 78 S.Ct. 839 (1958), a case which was clouded by other considerations dealings with inflammatory publicity and double jeopardy. There the defendant had committed four murders at the same time and was successively tried for the first and second and then for the third murder in an effort by the prosecutor to secure the death penalty. The prosecutor was successful at the third trial. The per curiam opinion of the majority of the Supreme Court shows that on the appeal it was "undisputed that evidence of the entire occurrence [of the four homicides] was relevant in each of the three prosecutions." (p. 572, 78 S.Ct. p. 840) Here, on the other hand, there was a specific objection made to the admission of evidence of Daniel Boston's resulting death, on the ground of its irrelevancy. If *Ciucci* has any application to the present case it is only in its approval of consecutive separate trials for murders committed in one occurrence. Since appellant therefore can be tried separately for Daniel's murder great care must be taken not to mingle it with the facts relating to his trial for the killing of Mrs. Boston. Finally, the Illinois procedure under which Ciucci was tried apparently left it to the jury to determine preliminarily whether the death penalty should be imposed [1] and made no provision for the presentation of evidence relating to penalty separate from the evidence relating to guilt, such as Pennsylvania adopted in its Split Verdict Law.[2] As in Pennsylvania, prior to the Split Verdict Law, the introduction of such evidence apparently was determined unavoidable in order to afford the jury adequate means of determining the penalty.[3]

It is not enough that appellant may have been guilty of brutal murders. In such shocking circumstances it is all the more requisite that courts guard against a wave of emotion which would inundate a dispassionate decision by preventing the presentation of inflammatory evi-

1. Ill.Annot.Stat. ch. 38, § 360, now § 9–1; ch. 38, §§ 390–392, now § 1–7.

2. Act of December 1, 1959, P.L.1621, § 1, 18 Purdon's Pa., Stat.Annot. § 4701.

3. See United States ex rel. Lowry v. Myers, supra, 364 F.2d at 301.

dence which is not of probative value on the issue which the jury is to decide. Otherwise the trial of a case such as this would be no more than an exercise in ritual, leading inevitably to the accused's doom.

I would hold that the introduction of the evidence relating to Daniel Boston's death deprived appellant of due process of law, because it was of no probative value to the issue of premeditation in the killing of Mrs. Boston and was so prejudicial that it rendered his trial fundamentally unfair.

FORMAN, Circuit Judge, joins in this dissent.